## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

| | |
|---|---|
| BASEEM MISSAGHI, individually and on behalf of all others similarly situated, | Civil File No. _____ |
| *Plaintiff,* | |
| v. | **CLASS ACTION COMPLAINT** |
| BLOCKBUSTER L.L.C., a Texas Company, f/k/a BLOCKBUSTER, INC. | **DEMAND FOR JURY TRIAL** |
| *Defendant.* | |

---

Plaintiff Baseem Missaghi ("Plaintiff" or "Missaghi"), individually and on behalf of all others similarly situated, by and through his counsel, brings this Class Action Complaint against Defendant Blockbuster, L.L.C., to put a stop to its unlawful practice of retaining Plaintiff's personally identifiable information and to seek redress for such conduct. Plaintiff Missaghi, on his own behalf and on behalf of a class of similarly situated individuals, alleges as follows upon personal knowledge as to himself and his own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by his attorneys:

### INTRODUCTION

1.     Plaintiff brings this Class Action Complaint against Defendant Blockbuster, L.L.C., f/k/a Blockbuster, Inc. ("Blockbuster" or "Defendant") for its unlawful retention of his personally identifiable information, including his credit card information, billing

address, and video programming viewing history, in violation of the Video Privacy Protection Act, 18 U.S.C. §§ 2710 ("VPPA").

2.      Blockbuster is a popular American company that provides video programming material to its subscribers through both streaming Internet video and an online rental service that delivers DVD and Blu-ray Discs through the mail.

3.      Blockbuster maintains a digital record system that contains details about each of its subscribers' purchase and rental histories, as well as Internet streaming content. Blockbuster also stores records containing its customers' contact and billing information.

4.      As a result, Blockbuster maintains a virtual digital dossier on millions of consumers nationwide. These records contain not only its customers' credit card numbers and billing/contact information, but also a highly detailed account of their video viewing histories and preferences.

5.      In recognition of the fact that companies who rent or sell audiovisual material—like Blockbuster—must collect certain confidential and sensitive consumer information with respect to personal viewing habits, the VPPA requires such companies to "destroy personally identifiable information as soon as practicable." 18 U.S.C. § 2710(e).

6.      However, in direct contravention of the protections afforded to consumers under the VPPA, Blockbuster maintains and stores its customers' credit card numbers, billing and contact information, and most importantly, sensitive video programming viewing histories, for an indefinite period of time.

7.     Accordingly, Blockbuster has knowingly retained the "personally identifiable information" and sensitive viewing histories of millions of consumers in violation of the VPPA.

## PARTIES

8.     Plaintiff Baseem Missaghi is a natural person and citizen of the state of Minnesota.

9.     Defendant Blockbuster, L.L.C., a wholly owned subsidiary of Dish Network Corp., is a company organized and existing under the laws of the state of Texas with its headquarters and principal place of business located at 3000 North Redbud Boulevard, in the city of McKinney, state of Texas. Blockbuster does business throughout the state of Minnesota and the United States.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction over Plaintiff's claims arising under the laws of the United States pursuant to 28 U.S.C. § 1331.

11.     This Court has personal jurisdiction over Blockbuster because it is registered to do and does business in Minnesota, and the improper conduct alleged in the Complaint occurred in or was directed at Minnesota.

12.     This Court is an appropriate venue for the adjudication of this controversy because a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## FACTUAL BACKGROUND

### The Video Privacy Protection Act and Digital Dossiers

13.     The desire to keep video programming viewing history records private led Congress to enact the Video Privacy Protection Act in 1988. Inspired by the release of video viewing records of Supreme Court Justice Nominee Robert H. Bork and his family, Congress promulgated the Act to explicitly preserve United States citizens' right to privacy in their video viewing histories.

14.     When the VPPA was introduced, the late Senator Paul Simon noted that,

> There is no denying that the computer age has revolutionized our world. Over the past 20 years we have seen remarkable changes in the way each one of us goes about our lives. Our children learn through computers. We bank by machine. We watch movies in our living rooms. These technological innovations are exciting and as a nation we should be proud of the accomplishments we have made. Yet, as we continue to move ahead, we must protect time honored values that are so central to this society, particularly our right to privacy. The advent of the computer means not only that we can be more efficient than ever before, but that we have the ability to be more intrusive than ever before. *Every day Americans are forced to provide to businesses and others personal information without having any control over where that information goes. These records are a window into our loves, likes, and dislikes.*

S.Rep. No. 100-599 at 7-8 (1988) (emphasis added).

15.     In another strikingly accurate forward-looking statement, Senator Patrick Leahy remarked that "the trail of information generated by every transaction that is now recorded and stored in sophisticated record-keeping systems is a new, more subtle and pervasive form of surveillance." S.Rep. No. 100-599 at 8 (1988).

4

16.    Although in 1988 these Senators could not possibly forecast the amount of data collected about consumers today by large video-programming providers such as Blockbuster, both Sen. Simon's and Sen. Leahy's comments would prove prescient.

17.    Many glaring and dangerous privacy issues are implicated by Blockbuster's practice of retaining video programming viewing histories indefinitely—the exact type of dangers that the VPPA was enacted to thwart.

18.    The VPPA affords consumers significant protections with respect to the storage, confidentiality, and ultimate destruction of any records concerning the names and titles of any movies they have rented or purchased.

19.    Specifically, the VPPA requires video-programming providers to destroy "personally identifiable information as soon as practicable, but no later than one year from the date the information is no longer necessary for the purpose for which it was collected…." 18 U.S.C. § 2710(e).

20.    Under the VPPA, the term "personally identifiable information" means all "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(4).

### A Brief Overview of Blockbuster

21.    Blockbuster holds itself out as a leading global provider of in-home movie and gaming entertainment.

22.    Blockbuster has developed a complex online system to provide catalogued video programming to its subscribers. Using this system, subscribers are offered the

5

opportunity to rank viewing selections. Blockbuster uses these user-inputted rankings to recommend video programming to the subscriber based upon his or her preferences.

23.     Subscribers of Blockbuster's services may also rent DVDs from its website, which are then physically shipped to the individual.

24.     Through the use of a "queue" system, Blockbuster allows subscribers to keep track of movies and television shows they would like to watch in the future.

25.     Blockbuster's "queue" is, for all intents and purposes, a specific request for movie programming. According to its website, Blockbuster suggests that customers "try to have 10 - 15 or more available movies in your Queue to ensure there are no delays in shipments."

26.     Blockbuster's subscribers are able to cancel their subscriptions to Blockbuster's services at any time.

**The Information That Blockbuster Stores About Its Subscribers**

27.     According to its website, Blockbuster collects, stores, and analyzes data about its subscribers in the following manner:

> Blockbuster collects personal information from you when you voluntarily submit that information to Blockbuster, for example: when you apply for a customer membership in our stores; register on a Site; sign up for a subscription service; register for our e-newsletter service; participate in one of our sweepstakes, contests, or surveys; respond to an offer; purchase or rent products; or request to be on a mailing list ... Blockbuster employs third party vendors, service providers, and suppliers to perform various functions on our behalf. Such services include: fulfilling orders; processing credit card or check card payments; collecting debts; removing repetitive information from customer lists; analyzing data; developing, hosting and maintaining our Web Sites and databases;

> sending and receiving e-mail and other communications; and staffing customer service call centers. These third parties may have access to personally identifiable information as reasonably necessary for the third party to provide these services.

(*See*, Blockbuster Privacy Policy, http://www.blockbuster.com/corporate/privacyPolicy (last visited September 1, 2011)).

28.    What users do not realize, however, is that Blockbuster maintains this video-viewing information, along with confidential user payment information including full name, address, and other billing information, in its database(s) long after users cancel their Blockbuster subscriptions.

29.    As evidenced by its Privacy Policy above, Blockbuster uses this information for, among other things, analyzing the data for its own purposes. Accordingly, Blockbuster benefits—monetarily and otherwise—from retaining former users' information.

30.    Once a Blockbuster user cancels his or her service, he or she reasonably expects Blockbuster to delete all personal information generated over the course of his or her subscription. At the very least, former users could not expect Blockbuster to retain and actually benefit from such private information entrusted over the course of the subscriber relationship.

## Blockbuster Systematically Violates The VPPA

31.    The digital records containing the video programming viewing histories that Blockbuster stores include every DVD that the customer has ever rented or

purchased from Blockbuster, as well as information which identifies the customer as having requested or obtained specific video materials or services.

32.     Blockbuster systematically violates the VPPA by storing and maintaining its customers' "personally identifiable information," as that term is defined by the VPPA, long after a customer cancels his or her subscription.

## FACTS RELATING TO PLAINTIFF BASEEM MISSAGHI

33.     Plaintiff Baseem Missaghi is a former customer who subscribed to Blockbuster's membership program in or around July of 2005.

34.     Plaintiff cancelled his subscription with Blockbuster in or around September of 2005.

35.     Throughout the duration of his subscription membership, Plaintiff Missaghi ordered and viewed numerous DVD's from Blockbuster.

36.     Although Plaintiff cancelled his account with Blockbuster, Blockbuster continues to store and maintain Plaintiff's personally identifiable information, including his personal video programming viewing history, and billing address.

## CLASS ALLEGATIONS

37.     **Definition of the Class:** Plaintiff brings this lawsuit pursuant to Fed. R. Civ. P. 23(b)(2) and (3) on behalf of himself and a Class of similarly situated individuals, defined as follows:

> All persons in the United States who requested video programming through Blockbuster's subscription service, wherein Blockbuster retained their personally identifiable information, including information which identifies the person as having requested or

obtained specific video materials or services, after the person
cancelled his or her account with Blockbuster.

Excluded from the Class are (1) Defendant, Defendant's agents, subsidiaries,
parents, successors, predecessors, and any entity in which the Defendant or their
parents have a controlling interest and their current and former employees,
officers, and directors, 2) the Judge(s) and Magistrate Judge(s) to whom this case
is assigned and the Judge's and Magistrate Judge's immediate families, 3) persons
who execute and file a timely request for exclusion, and 4) the legal
representatives, successors, or assigns of any such excluded person

    38.   **Numerosity:** The exact number of the members of the Class is unknown
and is not available to Plaintiffs at this time, but individual joinder in this case is
impracticable. The Class consists of thousands of individuals and other entities. Class
members can be easily identified through Defendant's records and public records.

    39.   **Commonality:** There are many questions of law and fact common to the
claims of Plaintiff and the other members of the Class, and those questions predominate
over any questions that may affect individual members of the Class. Common questions
for the Class include but are not limited to the following:

    a.  Whether Blockbuster unlawfully retained its former subscribers' personally
identifiable information and personal video programming viewing histories;
and

    b.  Whether Blockbuster's conduct violates the Video Privacy Protection Act,
18 U.S.C. §§ 2710, *et seq.*;

40.    **Typicality:** The factual and legal bases of Blockbuster's liability to Plaintiff and to the other members of the Class are the same and resulted in injury to Plaintiff and all of the other members of the Class. Plaintiff and the other members of the Class have all suffered harm as a result of Blockbuster's wrongful conduct.

41.    **Adequate Representation:** Plaintiff will fairly and adequately represent and protect the interests of the Class members, and has retained counsel competent and experienced in complex class actions. Plaintiff has no interest antagonistic to those of the Class and Defendant has no defenses unique to Plaintiff.

42.    **Predominance and Superiority:** This class action is appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. It would be virtually impossible for the individual members of the Class to obtain effective relief from Defendant's misconduct. Even if members of the Class themselves could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

43.     **Policies Generally Applicable to the Class:** This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole. Defendant's policies challenged herein apply to and affect all members of the Class uniformly, and Plaintiff's challenge of these policies hinges on Defendant's conduct, not on facts or law applicable only to Plaintiff.

**COUNT I: Violation of the Video Privacy Protection Act**
**(18 U.S.C. §§ 2710,** *et seq.***)**
**(On Behalf of Plaintiff and the Class)**

44.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

45.     Blockbuster is a "video tape service provider" as defined by VPPA because Defendant is "engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials..." 18 U.S.C. § 2710 (a)(4)

46.     Plaintiff is a "consumer," as defined by the VPPA, because he is a "renter, purchaser, or subscriber of goods or services from a video tape service provider." 18 U.S.C. § 2710(a)(1).

47.     The VPPA mandates, among other things, that a service provider "shall destroy personally identifiable information as soon as practicable, but no later than one year from the date the information is no longer necessary for the purpose for which it was collected...." 18 U.S.C. § 2710 (e).

48.    Blockbuster automatically charges its customers for the purchase price of any outstanding DVDs ten (10) days after a customer cancels his or her service, therefore it is not necessary for Blockbuster to store and maintain Plaintiff's personally identifiable information and personal video programming viewing history for longer than ten (10) days after the date of cancellation. Regardless of the practicalities, there is no legal excuse for retaining Plaintiff's information for more than one year after he cancelled his subscription.

49.    Accordingly, and in violation of the 18 U.S.C. § 2710(e), as Blockbuster continues to retain the personally identifiable information of Plaintiff and the putative Class, Blockbuster has failed to destroy its customers' personal information as soon as practicable after it was no longer necessary for the purpose for which it was collected, under no circumstances longer than one year.

50.    As a result, Plaintiff and the Class have suffered injuries. Defendant's illegal conduct should be enjoined, and Plaintiff and the Class should be awarded the maximum statutory damages available under 18 U.S.C. § 2710(c).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Baseem Missaghi prays that the Court enter judgment in his favor and in favor of the putative class and against Defendant Blockbuster, L.L.C., and for the following relief:

A.    Certify the action as a class action on behalf of the Class defined above, appoint Plaintiff as Class Representative, and designate his counsel as representatives of the Class;

B.     Declare that Blockbuster's conduct, as described herein, violates the Video Privacy Protection Act, 18 U.S.C. §§ 2710, *et seq.*;

C.     Award injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and the Class, including both an Order prohibiting Blockbuster from engaging in the wrongful and unlawful acts described herein and requiring Blockbuster to destroy its customers' personal information and video viewing histories that are no longer necessary for the purpose for which such information was collected;

D.     Award damages, including statutory damages of $2,500 per violation under the Video Privacy Protection Act, 18 U.S.C. § 2710(c) and any other statutory damages as deemed appropriate by the Court to Plaintiff and the Class in an amount to be determined at trial;

E.     Award Plaintiff and the Class their reasonable litigation expenses and attorneys' fees;

F.     Award Plaintiff and the Class pre- and post-judgment interest, to the extent allowable; and

G.     Award such other and further relief as equity and justice may require.

## JURY TRIAL

Plaintiff demands a trial by jury for all issues so triable.

Dated: September 6, 2011                    LOCKRIDGE GRINDAL NAUEN P.L.L.P.

                                            By: _____
                                                Robert K. Shelquist, #21310X
                                                Matthew R. Salzwedel, #0312903
                                                Scott A. Moriarity, #0321977
                                                100 Washington Avenue South, Suite 2200
                                                Minneapolis, Minnesota 55401
                                                Tel: 612-339-6900
                                                Fax: 612-339-0981
                                                rkshelquist@locklaw.com

                                                Jay Edelson
                                                Rafey S. Balabanian
                                                William C. Gray
                                                Ari J. Scharg
                                                EDELSON MCGUIRE, LLC
                                                350 North LaSalle Street, Suite 1300
                                                Chicago, Illinois 60654
                                                Tel: (312) 589-6370
                                                Fax: (312) 589-6378
                                                jedelson@edelson.com
                                                rbalabanian@edelson.com
                                                wgray@edelson.com
                                                ascharg@edelson.com
                                                *Attorneys for Plaintiff*

14